# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: J.T. and J.T.**

**No. 13-1232** (Jackson County 12-JA-52 and 12-JA-53)

**FILED**

June 2, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father filed this appeal by his counsel, D. Shane McCullough, from an order entered November 12, 2013, in the Circuit Court of Jackson County, which terminated his parental rights to five-year-old J.T.-1 and four-year-old J.T.-2.[1] The guardian ad litem for the children, Laurence W. Hancock, filed a response in support of the circuit court's order. The Department of Health and Human Resources ("DHHR"), by its attorney, William P. Jones, also filed a response in support of the circuit court's order. Petitioner argues that the circuit court erred when it failed to extend his improvement period and when it based its termination of his parental rights on his alleged failure to obtain suitable housing and on his low intellectual functioning.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2012, a Child Protective Services ("CPS") worker visited the family's home after the DHHR was alerted that J.T.-1 came to school dirty and dressed in filthy clothes, suffered from chronic diaper rashes, and was almost non-verbal. During the CPS worker's visit to the home, she observed unsafe and unsanitary conditions. For instance, she reported that there was a dilapidated porch with trash and metal surrounding it; a living room heated entirely by a wood burning stove surrounded by clothing, trash, paper, and toys; countless cockroaches crawling on the walls and scattered across the floor; several soiled diapers on the floor where the children walked barefoot; soiled linens on the bed that the entire family shared; dishes overflowing the kitchen sink; a refrigerator with mildew and moldy food; and a non-working bathtub in the filthy bathroom. When the CPS worker informed petitioner that she would need to implement a protection plan, he threatened to kill her. The DHHR filed an abuse and neglect petition against the children's parents shortly thereafter. The petition alleged that, based on the CPS worker's observations and experience at the home, the home was unsafe and unsuitable for the children. Both parents waived their rights to a preliminary hearing.

---

[1] Because the children in this case have the same initials, we have distinguished each of them using numbers 1 and 2 after their initials in this Memorandum Decision. The circuit court case numbers also serve to distinguish each child.

At the adjudicatory hearing in January of 2013, both parents stipulated to their abuse and neglect of their children by exposing them to deplorable conditions in the home unfit for habitation, that they did not provide the children with appropriate hygiene and grooming, and that they lack the skills to appropriately parent the children. Petitioner also stipulated that he has significant issues with impulse and anger control and that he lacks the tools and self-awareness necessary to deal with these issues. The circuit court granted both parents a six-month post-adjudicatory improvement period with directions to submit to a psychological evaluation. The circuit court also directed petitioner to participate in services recommended to develop appropriate parenting skills, learn the developmental needs of each child, and appropriately modify his behaviors to address their current and future physical and emotional needs. Petitioner was also required to learn how to appropriately establish a responsible, healthy, and appropriate home to best meet the needs of the children.

In September of 2013, petitioner filed a motion to extend his improvement period. In October of 2013, the DHHR filed a motion to terminate petitioner's improvement period and another motion to terminate his parental rights. On October 23, 2013, the circuit court heard testimony and arguments on these motions. After finding that the abusive and neglectful conditions of the original petition still existed and that neither parent significantly improved despite their efforts through services, the circuit court denied petitioner's motion to extend his improvement period and terminated both parents' parental rights by order entered on November 12, 2013. Petitioner now brings this appeal.

This Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner raises three assignments of error. First, petitioner argues that the circuit court erred in denying his motion for an extension of his improvement period. Petitioner asserts that he successfully completed his improvement period. Second, petitioner argues that the circuit court erred in terminating his parental rights based, in part, on finding that he had not obtained suitable housing for the children. Petitioner asserts that this finding was in error because no one from the

DHHR officially inspected the new home. Lastly, petitioner argues that the circuit court's termination of his parental rights was in error because it was based, in part, on his borderline low functioning and the unlikelihood that petitioner would achieve significant capacity to properly provide and care for his children.

Upon our review of the record, we find no error by the circuit court in its decision to deny petitioner's motion for an extension of his improvement period or to terminate his parental rights. West Virginia Code § 49-6-12(g) directs as follows:

> A court may extend [an] improvement period . . . for a period not to exceed three months when the court finds that the [subject parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the [DHHR] to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.

At the same time, West Virginia Code § 49-6-12(f) directs:

> When any [subject parent] is granted an improvement period pursuant to the provisions of this article, the [DHHR] shall monitor the progress of such person in the improvement period. When the [subject parent] fails to participate in any service mandated by the improvement period, the [DHHR] shall initiate action to inform the court of that failure. When the [DHHR] demonstrates that the [subject parent] has failed to participate in any provision of the improvement period, the court shall forthwith terminate the improvement period.

We also bear in mind that West Virginia Code § 49-6-5(b) provides a non-exclusive list of circumstances that shall be considered those in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected. Included are circumstances in which the subject parent has not responded to or followed through with a reasonable family case plan and circumstances in which the subject parent has emotional illness, mental illness, or mental deficiency of such nature as to render the parent incapable of exercising proper parenting skills or to adequately improve these skills.

Our review of the record reveals that despite petitioner's participation with services, petitioner failed to apply any of his efforts towards properly caring for his children. The record shows that petitioner acquired a mobile home towards the end of his improvement period, but had not begun to live there. At the dispositional hearing, petitioner testified that he still needed to complete some work on it, such as replace a whole section of the bathroom floor. During the course of the proceedings, both parents lived in a motel room where visitations with the children sometimes took place. The DHHR's motions to terminate petitioner's improvement period and to terminate his parental rights assert that visitation with the children had to be suspended due to an infestation of bed bugs in the parents' filthy and noxious motel room. At the dispositional hearing, the family's caseworkers testified that despite several months of services, petitioner failed to recognize and respond to the needs of his children during visits. For instance, petitioner did not recognize when his children needed to have their soiled diapers changed. On another

3

occasion, petitioner was observed grabbing an arm of one of the children while threatening to whip the child with a belt; and, when asked about the state of the motel room, petitioner's excuse was that he did not have enough money to buy trash bags.

This evidence supports the circuit court's decision to deny petitioner's motion for an extension of his post-adjudicatory improvement period. Even though petitioner asserted that he had another home for his family, his disorderly and unkempt motel room and his attitude toward it did not demonstrate that he would have been able to provide a safe and suitable environment in the new home. The evidence also supports the circuit court's findings and conclusions that there was no reasonable likelihood that conditions of abuse and neglect could be substantially corrected in the near future, and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 2, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II